**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SAUL H. CATALAN and<br>MIA MORRIS,<br><br>    Plaintiffs,<br><br> v.<br><br>RBC MORTGAGE CO. d/b/a RBC<br>CENTURA BANK and GMAC<br>MORTGAGE COMPANY,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 05 C 6920<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER
ON ADDITIONAL MOTIONS IN LIMINE**

**I. Introduction**

After the first of two pretrial conferences in this case, held on June 5, 2008, the parties filed additional motions in limine. Defendant RBC filed a motion in limine to bar references to or evidence of willful and wanton conduct and punitive damages [187]. Plaintiffs filed a motion in limine to exclude any evidence that RBC sent Plaintiffs a notice of a separate and exclusive office and address for the receipt and handling of "qualified written requests" under the Real Estate Settlement Practice Act ("RESPA") and its implementing regulations [189]. Both motions raised matters of importance to the conduct of the trial in this case. Not surprisingly, both motions have been hotly contested and heavily briefed – including the filing of two surreply briefs on Plaintiffs' motion on the day before trial [207, 209][1] – and have required a substantial investment of the Court's resources to resolve. For the reasons explained below, the Court denies RBC's motion in limine [187] and provisionally grants Plaintiffs' motion [189].

---

[1] Plaintiffs' emergency motion [208] for leave to file a response to RBC's surreply is granted; the Court has considered both the surreply and the sur-response in disposing of the motion in limine.

II.  Analysis

   A.   RBC's Motion in Limine Concerning Willful and Wanton Conduct and
        Punitive Damages.

Between July 25, 2003, and September 15, 2004, Defendant RBC was the owner and servicer of Plaintiffs' mortgage loan on their residence. After RBC transferred the loan to GMAC Mortgage Company, Plaintiffs filed this action asserting four causes of action: Count I – violations of the Cranston-Gonzales Amendments to the federal Real Estate Settlement Procedures Act ("RESPA"), Count II – gross negligence, Count III – wrongful foreclosure/breach of contract, and Count IV – willful and wanton conduct.

In a memorandum opinion and order dated November 15, 2006, Judge Lindberg granted summary judgment in favor of GMAC on all counts and denied RBC's motion for summary judgment in its entirety. Judge Lindberg did, however, dismiss Plaintiffs' claim for gross negligence on the grounds that the claim for gross negligence was "duplicative" of the claim for willful and wanton conduct and that the claim for willful and wanton conduct "is more consistent with Illinois law." [118, at 5.] Judge Lindberg also held that there is no cause of action for wrongful foreclosure in Illinois, and thus he treated Count III solely as asserting a claim for breach of contract. [*Id*.]

As Judge Lindberg observed, although Illinois law generally forbids recovery of punitive damages for breach of contract, even if the breach is willful, an exception to the general rule obtains when "the conduct causing the breach is also a tort for which punitive damages are available." [118, at 6.] In denying RBC's motion for summary judgment on Plaintiffs' willful and wanton conduct claim (Count IV), Judge Lindberg noted that Plaintiffs contend that RBC "purposefully and deliberately fil[ed] foreclosure proceedings on plaintiffs' home despite assurances that it would resolve the problem and by refusing to accept plaintiffs' monthly

mortgage payments that [were] timely submitted," and that RBC did so "for [its] own financial gain and at the expense of plaintiffs." [*Id*. at 6-7.] Judge Lindberg then explained that, on the basis of those contentions, "a reasonable juror could infer" that RBC's actions "constituted willful and wanton conduct sufficient to amount to a tort, justifying punitive damages." [*Id*. at 7.]

Notwithstanding Judge Lindberg's prior ruling, on June 11, 2008, RBC filed a motion in limine [187] seeking to bar Plaintiffs from introducing, testifying, or otherwise referring to or commenting on any allegations of willful and wanton conduct or requests for punitive damages. RBC insists that Judge Lindberg's ruling "should be construed to mean that plaintiffs' allegations – viewed in the light most favorable to plaintiffs – might give rise to conduct sufficient to justify a request for punitive damages, but it would remain incumbent on plaintiffs to establish the existence of an underlying tort." And based on that reading of Judge Lindberg's ruling, RBC requests that the Court bar Plaintiffs from commenting on willful or wanton conduct or punitive damages during voir dire or opening statements and bar Plaintiffs from introducing evidence or commenting on allegations of willful and wanton conduct or requests for punitive damages until "they have identified an independent tort (with the requisite factual and legal basis) sufficient to justify a claim for punitive damages."

As an initial matter, it is debatable whether RBC's motion in limine seeks reconsideration or clarification of Judge Lindberg's prior ruling. In either case, it would have been preferable for RBC to have filed its motion shortly after the summary judgment ruling was entered – or, at a minimum, when motions in limine were filed before Judge Lindberg prior to the transfer of this case. Filing at this late date, before a different judge to whom the case has been transferred, creates extra complications, not the least of which is the law of the case doctrine. To the extent

that RBC's motion seeks reconsideration, "the law of the case doctrine embodies the notion that a court ought not to re-visit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants re-examination." *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007); see also *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005). The Seventh Circuit has made clear that the presumption that earlier rulings will stand "holds when a case is reassigned from one judge to another" (*Minch*, 486 F.3d at 301), and that a successor judge is not free to alter prior rulings "merely because he has a different view of the law or the facts from the first judge" (*Mendenhall*, 419 F.3d at 691). Accordingly, the Court must keep in mind law of the case considerations in ruling on RBC's motion.

Turning to the merits, as Judge Lindberg properly noted, under Illinois law, punitive damages generally are not available for a breach of contract – even a willful breach of contract. *Morrow v. L.A. Goldschmidt Associates, Inc.*, 112 Ill. 2d 87, 94 (1986). However, the Illinois courts have recognized an exception to that general rule "when the conduct causing the breach is also a tort for which punitive damages are recoverable." *Id*. (citing *McIntosh v. Magma Systems, Inc.*, 539 F. Supp. 1185 (N.D. Ill. 1982) (applying Illinois law)). In other words, punitive damages may be available "where the breach amounts to an independent tort and there are proper allegations of malice, wantonness, or oppression." *Id*. at 95; see also *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186 (1978). Count IV of Plaintiffs' complaint is an effort to take advantage of the "independent tort" exception to assert a claim for which punitive damages might be available.[2]

As a threshold matter, the Court respectfully disagrees with RBC's proposed construction of Judge Lindberg's prior ruling. After reciting the Illinois case law that both parties agree control the issue, Judge Lindberg concluded that "a reasonable juror could infer that RBC's

---

[2] The only reported decision that the Court's research has uncovered to have addressed the issue has held that punitive damages are not available under RESPA (see *In re Tomasevic*, 273 B.R. 682, 686 (M.D. Fla. 2002)), and Plaintiffs do not contend otherwise.

4

failure to respond to plaintiffs' letters and its failure to discover its error relating to payment due date and monthly amount due constitutes willful and wanton conduct *sufficient to amount to a tort*, justifying punitive damages." [118, at 7.] Because that ruling was issued in denying a motion for summary judgment – not at the pleadings stage – it must be read as identifying a triable issue on Count IV. RBC's contention that the ruling "should be construed" to leave open the question of whether Plaintiffs have identified an independent tort cannot be sustained; if Judge Lindberg felt that Plaintiffs had not identified such a tort, he would have granted summary judgment for RBC on Count IV.

But what is the independent tort? Illinois does not appear to recognize an independent cause of action for "gross negligence" (see *Instituto Nacional de Comercialization Agricola v. Continental Ill. Nat'l Bank*, 530 F. Supp. 279, 283 (N.D. Ill. 1982)), for "willful and wanton conduct" (*Ziarko v. Soo Line R.R.*, 161 Ill. 2d 267, 275-76 (1994)), or, as Judge Lindberg held, for wrongful foreclosure. The parties do not appear to dispute any of these propositions. Accordingly, Plaintiffs' independent tort claim, if any, must be a claim for negligence. Indeed, in the summary judgment briefing, the parties appeared to agree on that point – although they disagreed as to whether Plaintiffs could raise a triable issue on such a claim. See RBC SJ Reply Br. at 11 (acknowledging that "Plaintiffs' only legally cognizable claim lies in negligence," but contending that such a claim fails because "absent from the record is evidence of damages, an essential element").

If Plaintiffs' "independent tort" claim is one for negligence, Plaintiffs must articulate a duty owed to them by RBC separate and apart from the statutory and contractual duties that Plaintiffs seek to enforce through Counts I and III. In their brief in opposition to RBC's motion in limine, Plaintiffs stress that they seek to recover against RBC as "note holder" through the

breach of contract claim and against RBC as "mortgage servicer" through the RESPA and "willful and wanton" claims. [195, at 3.] The independent duty must therefore be based on RBC's conduct as "mortgage servicer." It cannot be the failure to respond to QWRs, however, since Plaintiffs are pursuing in Count I the remedy that Congress has provided under RESPA for such conduct. Nor can the independent duty be one that Plaintiffs seek to enforce through their breach of contract claim. That eliminates, for example, various duties identified by Plaintiffs in their summary judgment briefs and brief in opposition to RBC's motion in limine. Any duties to service the loan in accordance with the Note and Mortgage – for example, duties to "accept proper monthly payments," or to not "foreclose on plaintiff's home when there had been no breach by plaintiffs" – cannot constitute the *independent* tort (or torts), because Plaintiffs have asserted that those actions constitute a breach of contract. See Pl. Trial Br. at 14.

However, cases cited by the parties in their summary judgment briefs before Judge Lindberg do identify an independent tort that Plaintiffs may seek to enforce in a negligence claim (or, if Plaintiffs had articulated it, a breach of fiduciary duty claim). "Mortgage contracts carry with them an implied duty of professional competence" that is "similar to the duties of attorneys and accountants to use their own knowledge and expertise and therefore makes the duty arise outside of the contract." *Ploog v. Homeside Lending, Inc.*, 209 F. Supp. 2d 863, 875 (N.D. Ill. 2002) (citing *Congregation*, 159 Ill. 2d at 162-63 and *Choi v. Chase Manhattan Mortgage Co.*, 63 F. Supp. 2d 874, 885 (N.D. Ill. 1999)).

Although Judge Lindberg did not identify a specific tort or duty in his summary judgment ruling, the duty identified in *Ploog* plainly fits the kind of conduct that Judge Lindberg found, if proven at trial, could "constitute[] willful and wanton conduct *sufficient to amount to a tort, justifying punitive damages.*" Judge Lindberg's pointed comparison between GMAC's conduct

6

as Plaintiffs' mortgage servicer and RBC's alleged conduct – disputed by RBC, of course – could be characterized as highlighting the difference between discharging and breaching an implied duty of professional competence. For these reasons, this Court declines to revisit Judge Lindberg's ruling on Count IV and denies RBC's motion in limine.

Nevertheless, as the discussion at the final pretrial conference held on June 20, 2008, illuminated, the mere fact that the Court is satisfied under the law of the case doctrine that Judge Lindberg's prior ruling was not manifestly wrong because Illinois appears to recognize an independent tort that could be sustained if the jury accepted Plaintiffs' version of the facts does not mean that Plaintiffs' negligence claim does not suffer from serious potential deficiencies. As the foregoing discussion demonstrates, although the parties had by the time of the summary judgment briefing agreed that the independent tort claim asserted by Plaintiffs was a negligence claim, Plaintiffs never specified what duty they sought to enforce through their negligence claim. Nor did Plaintiffs identify at the final pretrial conference any *independent* duty – that is a duty that they are not seeking to enforce under RESPA or the mortgage or the note – other than the one identified by the Court, after an exhaustive examination of the briefs filed and cases cited by the parties at the summary judgment stage and on the pending motion in limine. Indeed, Plaintiffs did not even submit a jury instruction on the elements of any negligence claim, even though that is the only conceivable basis for proceeding with Count IV of their complaint.[3]

It remains for Plaintiffs to prove at trial all of the elements of their negligence claim, including that (i) RBC breached a duty and (ii) that it did so in a willful and wanton manner sufficient to justify an award of punitive damages. But perhaps the most significant obstacle to

---

[3] Given the nebulous manner in which Plaintiffs have articulated and presented for trial the claim asserted in Count IV at every stage of this case, the Court might very well have found the claim to have been waived or abandoned but for the law of the case doctrine and the parties' reasonable expectations, based on the prior judge's ruling, that there would be a triable issue on that claim.

7

Plaintiffs' pursuit of a negligence claim is the distinct possibility that the only duty that has been identified that Plaintiffs may seek to enforce as an *independent* tort – an "implied duty of professional competence" that is "similar to the duties of attorneys and accountants to use their own knowledge and expertise and therefore makes the duty arise outside of the contract" – may require expert testimony to establish a standard of care and a breach thereof. *It is the general rule in Illinois that expert testimony is necessary to establish professional negligence.* See, *e.g.*, *Hoagland v. Sandberg, Phoenix & Von Gontard, P.C.*, 385 F.3d 737, 743-44 (7th Cir. 2004) (applying Illinois law); *Massey v. United States*, 312 F.3d 272, 280 (7th Cir. 2002) (same); *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 199 (1st Dist. 2007); *Mansmith v. Hameeduddin*, 369 Ill. App. 3d 417, 426 (1st Dist. 2007). As those cases all recognize, there is an exception to the general rule where the purported negligence is so obvious that it "is within the ordinary knowledge and experience of laymen." *Barth v. Reagan*, 190 Ill. App. 3d 516, 521-22 (2d Dist. 1989).

In this case, on May 23, 2006, Judge Lindberg entered an order [50] barring all parties from introducing expert testimony. Thus, there will be no expert testimony in support of Plaintiffs' negligence claim. To the extent that Plaintiffs choose to pursue that claim at trial, it will be incumbent upon Plaintiffs to persuade the Court that this case falls within the exception to the general rule requiring expert testimony to prove professional negligence. If Plaintiffs are unable to do so, the Court likely will have no choice but to enter a directed verdict on the negligence claim at the close of the Plaintiffs' case. *Barth*, 190 Ill. App. 3d at 523 (concluding that "[t]he factual matters present here are such that the issue of negligence is not sufficiently clear so as to be determined by layman under the 'common knowledge' exception, but falls within the well-recognized general rule that expert testimony is necessary to establish the

standard of care" and holding that "[a]s the evidence was submitted by plaintiff without the required expert testimony, the circuit court erred in not granting defendant's motion for a directed verdict at the close of plaintiff's case"). To the extent that the parties wish to brief this issue, they are invited to file supplemental briefs by 5:00 pm on Wednesday, June 25, 2008.

### B.  Plaintiffs' Motion in Limine Concerning Evidence of a Separate and Exclusive Address for QWRs.

The RESPA imposes on servicers of certain mortgage loans certain duties to respond to inquiries by borrowers relating to the servicing of their loans. Those duties are triggered by the receipt by the servicer of a "qualified written request" for information. Federal law permits, but does not require, servicers to establish an exclusive office and address for the handling of QWRs. The pertinent regulation states that "[b]y notice either included in the Notice of Transfer or *separately delivered* by first-class mail, postage prepaid, a servicer may establish a *separate and exclusive office and address* for the receipt and handling of qualified written requests." 24 C.F.R. § 3500.21(e)(1) (emphasis added). If the servicer chooses to establish a separate and exclusive office and address, borrowers who fail to submit their QWRs to that location do so at their peril. See *Bally v. Homeside Lending, Inc.*, 2005 WL 2250856, at *1 (N.D. Ill. Sept. 8, 2005) (granting summary judgment for defendant where plaintiff failed to create a triable issue of fact that she properly sent QWRs to exclusive address designated in Notice of Transfer sent by defendant and received by plaintiff).

Plaintiffs have filed a motion in limine seeking to exclude any evidence that RBC sent Plaintiffs notice of a separate and exclusive office and address for the receipt and handling of qualified written requests ("QWRs"). Plaintiffs request that the Court find, as a matter of law, that RBC did not comply with 24 C.F.R. § 3500.21(e)(1). Plaintiffs contend that their motion should be granted because RBC never produced in discovery any documents supporting their

9

contention that they established such a separate and exclusive office, and should not now be permitted to introduce evidence that they did so.

In response to Plaintiffs' motion, RBC first argues that Judge Lindberg already has denied Plaintiffs' request to bar evidence of RBC's exclusive address for QWRs in denying Plaintiffs' fifth motion in limine. But RBC reads too much into that ruling. The issue that the parties presented for Judge Lindberg's consideration was whether "defendant should not be able to argue that plaintiffs failed to send the QWRs to any exclusive address because this is an affirmative defense that defendant has not raised." [171, at 1.] Judge Lindberg rejected that argument, concluding that whether Plaintiffs sent a QWR to RBC is an element of Plaintiffs' RESPA claim, not an affirmative defense, and that RBC's answer was sufficient to put that element of Plaintiffs' claim at issue. [*Id.*]

RBC also responds that "it advised plaintiffs of the appropriate address by letter and by the mortgage payment coupon book" that RBC contends it sent to Plaintiffs. [196, at 2.] Although RBC did not provide copies of those documents in response to Plaintiffs' motion, RBC previously had attached to its response to Plaintiffs' motion in limine 5 both the letter and the relevant portion of the coupon book as "evidence supporting RBC's denial that it received Plaintiffs' QWRs." [163, at 3 & Exs. A & B.] The Court will analyze each document in turn.

1. **Coupon Book**

RBC seeks to rely on testimony from its witnesses to explain that the front cover of a coupon book that it sends to all customers "includes the address to use for written correspondence" and that the address on that cover is a separate and exclusive address for purposes of responding to QWRs. But RBC's attempt to rely on the coupon book is foreclosed by a prior ruling in this case by Judge Lindberg. Specifically, Plaintiffs' motion in limine

number 8, which Judge Lindberg granted, requested that the Court bar RBC "from introducing or referring to RBC's Mortgage Coupon Book" and to direct RBC's counsel and witnesses "to refrain from soliciting, offering any direct or indirect testimony or argument regarding RBCs Mortgage Coupon Book." [151, at 1.] In granting the motion, Judge Lindberg concluded that RBC should have produced the coupon book in discovery because – as Plaintiffs' motion and RBC's responses confirm – the arguments based on the coupon book would be used to support RBC's claims or defenses. [167, at 2.] In Judge Lindberg's view, RBC's failure to honor its obligations under Rule 26(a) with respect to the coupon book triggered the "automatic and mandatory" sanction of exclusion at trial. [*Id.* (citing *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)).]

That ruling is law of the case, and cannot be set aside absent new controlling authority or a showing of manifest error – neither of which is present here. The upshot of Judge Lindberg's ruling is that all testimony concerning the substantive content of the coupon book – including the addresses printed on its cover – is excluded as a discovery sanction because RBC did not timely produce a copy of the book to Plaintiffs. Whether or not RBC sent, and Plaintiffs received, one or more coupon books, Judge Lindberg ruled that RBC should have produced a copy of a coupon book if it intended to rely on the content of the coupon book "to support its claims or defenses," and that the failure to do so rendered RBC unable to rely on the coupon book at trial.

RBC raises various arguments for why it should be allowed to present testimony relating to the content of its coupon book notwithstanding Judge Lindberg's ruling, but those arguments ultimately are unavailing. RBC notes that it identified in the final pretrial order certain contested issues of fact and law relating to the coupon book that RBC contends was sent to Plaintiffs. [196, at 2.] But the final pretrial order was entered on February 7, 2007, nearly six months

11

before Judge Lindberg issued his rulings on the motions in limine that excluded the coupon book from the case. Similarly, the fact that in the exhibit list provided with the pretrial order the parties identified and marked as exhibits, without objection, documents that make (rather cryptic) reference to a coupon book that RBC contends was mailed to Plaintiffs [see 207, at 1-2] likewise cannot supersede or circumvent Judge Lindberg's order. Indeed, Judge Lindberg's (and this Court's) rulings on motions in limine have altered the issues of fact and law that remain for trial in numerous respects. Nor can RBC make an "end run" around the order by using witnesses to construct for the jury a mental image of the excluded coupon book by offering testimony of its "corporate habit." [196, at 2-3.][4]

### 2. October 6, 2003 letter

RBC also has pointed to an October 6, 2003 letter to Plaintiffs as identifying a designated address for receiving written inquiries as contemplated in 24 C.F.R. § 3500.21(e)(1). That letter is addressed to Plaintiffs and states in its first line that "[t]his letter is furnished to you as a result of your failure to meet the terms and conditions on your mortgage loan." [See 163, Ex. A; 196, at 2; 202, Ex. 1.] The letter then informs Plaintiffs that they must pay a certain sum by a certain date to cure the default and advises Plaintiffs of the consequences of failing to pay and of certain legal rights that they have in connection with the default notice. Finally, it states that "[c]ommunication regarding this notice should be sent to the attention of Denise Pridgen." The letter is signed by Ms. Pridgen, who is identified under her signature as being with the

---

[4] Because testimony concerning the content and substance of the coupon book has been excluded under Judge Lindberg's prior ruling, the Court need not rule definitively on Plaintiffs' alternative argument that the information on the cover page of the coupon book cannot possibly satisfy the standards for providing notice to customers of a separate and exclusive address under 24 C.F.R. § 3500.21(e)(1). Nevertheless, consistent with the Court's construction of that regulation set forth below, the Court doubts that the coupon book could satisfy the "separate" document requirement or adequately notifies customers of an *exclusive* address for correspondence relating to the servicing of their loans, and it is clear that a coupon book is not a "Notice of Transfer."

"Mortgage Collections" department. In the upper right corner of the document are two addresses. One is for "Mortgage Loan Services" and lists a street address and a post office box in Rocky Mount, NC. The other is for "Payments" and lists a post office box in Charlotte, NC.

The question before the Court is whether that letter conceivably could comply with 24 C.F.R. § 3500.21(e)(1), or whether no reasonable juror could conclude that the letter satisfies the requirements of the regulation. With due respect, this Court must reject the suggestion by RBC that the October 6, 2003 letter raises a jury question concerning its compliance with the regulation. It is undisputed that notice was not provided in a "Notice of Transfer." Therefore, it was incumbent upon RBC to provide notice of a "separate and exclusive address for the receipt and handling of qualified written requests" in a document "separately delivered" to Plaintiffs.

The option of establishing a "separate and exclusive address" provides a powerful tool for servicers, for non-compliance by the customer can bar an otherwise potentially meritorious RESPA claim. *Bally*, 2005 WL 2250856, at *1. Because RESPA is a consumer protection statute (see, *e.g.*, *Johnstone v. Bank of America*, 173 F. Supp. 2d 809, 816 (N.D. Ill. 2001)), this Court must presume that HUD, in implementing the will of Congress, included the "separately delivered" requirement to ensure that borrowers would not be blindsided by notices of separate and exclusive addresses buried in the fine print of complex documents or conveyed subtly in communications from mortgage servicers. While neither Congress nor HUD specified any particular language for the notice, HUD did specifically require that the notice be conveyed in a separate document. The Court reads the regulation as mandating that a proper notice include only information concerning the designated "separate and exclusive address" and its purpose. For example, the notice considered adequate by the Court in *Bally* was set forth on a separate "Borrower Notification Attachment Per RESPA Act" and informed the borrower that "[i]f you

want to send a 'qualified written request' regarding the servicing of your loan, it *must* be sent to HomeSide at the address shown on the reverse side of this page." 2005 WL 2250856, at *1 (emphasis added).

The Court acknowledges RBC's concern that the use of terms in a notice such as "RESPA Act" and "qualified written request" may "forc[e] consumers to make legal determinations on their own regarding whether their inquiries constitute a QWR." [207, at 2.] Thus, the Court agrees that formulations other than the one used in *Bally* may satisfy the regulation. But the Court finds that to comply with the applicable regulation, at a minimum, the notice must be "separate" and must advise customers of a "separate and exclusive address" that they *must* use for the mailing of inquiries regarding the servicing of their mortgage loans.

The October 6, 2003 letter satisfies none of these requirements. The principal purpose of the letter is debt collection, and the only sense in which the letter establishes an "exclusive" address is the sentence directing communication "regarding this notice" to be sent to the attention of Denise Pridgen. Moreover, because the letter essentially demands payment, it is just as likely that Plaintiffs would have read the letter as directing them to send their correspondence to Ms. Pridgen at the address for payments, rather than the other address listed for "Mortgage Loan Services" that RBC insists is the separate and exclusive address for QWRs. Finally, even if the Court were to accept for the sake of argument that the letter should be construed to direct customers to send non-payment correspondence to the Rocky Mount, NC address, the letter in no way warns customers that the Rocky Mount address is an exclusive address – that is, that they *must* send their non-payment related correspondence to that address and *only* that address on pain of losing any REPSA claim that they may have. For all of these reasons, the Court concludes as a matter of law that the October 6, 2003 letter cannot satisfy 24 C.F.R. § 3500.21(e)(1).

In sum, Plaintiffs have asked this Court to rule as a matter of law that RBC did not comply with 24 C.F.R. § 3500.21(e)(1) and thus cannot contend at trial that it established a separate and exclusive office and address for the receipt and handling of QWRs. In response to that motion, RBC referred only to two ways in which it purports to have "advised [P]laintiffs of the appropriate address" – "by letter and by the mortgage payment coupon book." [196, at 2; see also 163, at 3.] Judge Lindberg's ruling on Plaintiffs' motion in limine 8 prevents RBC from relying on the coupon book, and this Court's ruling explained above bars RBC from relying on the October 6, 2003 letter. Accordingly, the Court provisionally grants Plaintiffs' motion in limine 12.[5]

## III. Conclusion

For the reasons stated above, the Court denies RBC's motion in limine [187] and provisionally grants Plaintiffs' motion in limine [189].

Dated: June 23, 2008

_____
Robert M. Dow, Jr.
United States District Judge

---

[5] The Court issues this ruling as "provisional" only because it cannot foreclose the possibility that it has overlooked other documents that have been admitted into evidence and that might satisfy the standards set forth above. While RBC should have cited any such documents in its two briefs opposing Plaintiffs' motion [196, 207] and assumes a heavy waiver burden for not having done so, the Court will permit RBC to raise – outside the presence of the jury and with sufficient advance notice to allow the Court to make an informed ruling – any such document that it believes the Court may have overlooked in issuing this ruling.