**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SAUL H. CATALAN and | ) | |
| MIA MORRIS, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 05 cv 6920 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| RBC MORTGAGE CO. d/b/a RBC CENTURA | ) | |
| BANK and GMAC MORTGAGE CORP., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiffs' petition for attorneys' fees and costs [281], Defendant RBC Mortgage Company d/b/a RBC Centura Bank's ("RBC") response [288], and Plaintiffs' reply [289].[1]  For the reasons stated below, Plaintiffs' petition is granted in part and denied in part.

**I.      Background**

In December 2005, Plaintiffs Saul Catalan and Mia Morris filed a complaint against Defendants RBC Mortgage Company ("RBC") and GMAC Mortgage Corporation ("GMAC"). Before the case was transferred to this Court's docket, Judge Lindberg granted summary judgment in favor of GMAC [see 118].  The case proceeded to trial on three claims against RBC: (i) violation of the Real Estate Settlement Practices Act ("RESPA"), (ii) breach of contract, and (iii) negligence.  Following a seven-day trial, the jury returned a verdict in Plaintiffs' favor on the RESPA and negligence claims and in RBC's favor on the breach of contract claim.  The jury

_____

[1] In addition to the initial briefing on the petition, the parties have submitted and discussed [see 299, 309, 312, 313] the applicability of several Seventh Circuit decisions addressing attorneys' fees that have been issued since the initial briefing was concluded.

awarded damages in the amount of $1,100 on the RESPA claim and $10,000 on the negligence claim, for a total award to Plaintiffs of $11,100.[2]

Currently before the Court is Plaintiffs' fee petition [281]. In that petition, Plaintiffs request fees and costs as follows:

> $234,643.30 in attorneys' fees;
> $1,904.00 in "recaptured telephone calls";
> $25,364.00 for "fee petition related matters";
> $7,162.00 in additional fees also related to objections to the fee petition; and
> $7,066.85 in costs.[3]

RBC – which, according to the parties' Local Rule 54.3 joint statement, incurred $369,000 in attorneys' fees and $31,000 in costs in this litigation – responds that Plaintiffs should receive little or no attorneys' fees because of their limited success at trial.

Mindful of the Supreme Court's admonition that "[i]deally, of course, litigants will settle the amount of the fee" (*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)), the Court referred the fee dispute to Magistrate Judge Nolan for a settlement conference. Unfortunately, the parties were unable to reach accord, and the tail thus has continued to wag the dog in this case. See *Estate of Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009). It therefore is incumbent on this Court to resolve the ongoing fee dispute and to provide a "concise but clear" explanation for its ultimate ruling. *Hensley*, 461 U.S. at 437; see also *Schlacher v. Law Offices of Phillip J. Rotche & Assocs.*, 574 F.3d 852, 857 (7th Cir. 2009) (explaining that a district court "must provide a clear and concise explanation for its award, and may not 'eyeball' and decrease the fee by an arbitrary percentage because of a visceral reaction that the request is excessive" and that the

---

[2] The Court denied RBC's Rule 50(b) motion seeking judgment as a matter of law on the negligence claim [see 291]. RBC did not appeal the verdict and it is the Court's understanding that RBC has paid the $11,100 judgment. Plaintiffs filed a notice of appeal [292] of Judge Lindberg's November 15, 2006 order [118] granting summary judgment in favor of GMAC.

[3] RBC does not contest Plaintiffs' costs.

court of appeals "review[s] an award of attorney's fees under a highly deferential abuse-of-discretion standard").

## II.     Analysis

The impetus for Plaintiffs' fee petition is the RESPA's fee-shifting provision, 12 U.S.C. § 2605(f)(3), which is designed "to ensure the effective prosecution of meritorious claims." *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1332-33 (11th Cir. 2002). By "permitting attorneys fees and costs as part of each allowable recovery," Congress sought to "encourage[] individual customers to raise valid RESPA claims." *Glover v. Standard Fed. Bank*, 283 F.3d 953, 965 (8th Cir. 2002). As the Seventh Circuit has observed more generally, "Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated." *Tolentino v. Friedman*, 46 F.3d 645, 652-53 (7th Cir. 1995).[4]

### A.     RBC's Threshold Objections

As an initial matter, RBC contends that Plaintiffs should not be entitled to any fee at all because their recovery at trial was so small. In other words, in RBC's view, even if Plaintiffs' were "prevailing parties," the reasonable fee award for a trifling victory is zero (or an amount very close to it).

The Seventh Circuit has read *Farrar v. Hobby*, 506 U.S. 103, 112 (1992), as "holding that a plaintiff who wins any measure of damages is a prevailing party for the purposes of fee-shifting statutes." *Moriarty v. Svec*, 233 F.3d 955, 966 (7th Cir. 2000). Thus, "[a] plaintiff

---

[4] As Defendants have noted, courts have endeavored to apply fee-shifting statutes uniformly and frequently follow Section 1988 precedents in analyzing fee claims under consumer protection statutes like the RESPA. See, *e.g.*, *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 602-03 & n.4 (2001); *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666-67 (7th Cir. 2001).

achieves 'prevailing party' status by recovering *any* judgment, even for nominal damages."

*Johnson v. Daley*, 339 F.3d 582, 587 (7th Cir. 2003) (en banc). Under that standard, Plaintiffs are prevailing parties.

Nevertheless, because fee-shifting statutes generally authorize only "reasonable" attorneys' fees, the case law indicates that, in some circumstances, parties who obtain an extremely small victory – described variously as "Pyrrhic," "nominal," "technical," or "de minimis" – may not be entitled to an award of fees. See, *e.g.*, *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 233 F.3d 585, 592 (7th Cir. 2000); see also *Farrar*, 506 U.S. at 114-15. In those circumstances, there is at least a presumption that any fee award would be unreasonable. See *Cole v. Wodziak*, 169 F.3d 486, 488 (7th Cir. 1999) ("a paltry jury award  *  *  * implies that the only reasonable fee is zero").[5] But, after careful review of the applicable Seventh Circuit precedent, the Court concludes that the jury award in this case, although modest, cannot be considered either "paltry" or "de minimis." See *Moriarty*, 233 F.3d at 592 (party awarded a judgment of $2,400 was entitled to reasonable attorneys' fees); *Cole*, 169 F.3d at 488 (recoveries by one plaintiff of $3,500 and by the other plaintiff of $1,000 in compensatory and punitive damages were "more than a pittance" and qualified both plaintiffs as "prevailing parties" who were "entitled to 'reasonable' fees").[6]

---

[5] To be sure, the correlation between the damages awarded and the availability of attorneys' fees is not absolute. Recognizing that "[n]ominal relief does not necessarily a nominal victory make" (*Farrar*, 506 U.S. at 121 (O'Connor, J., concurring)), courts sometimes award substantial fees in cases that involve a small monetary victory, yet are significant for legal or public purpose reasons.

[6] The Court also rejects any suggestion by RBC that there is a "rule" in this circuit foreclosing any fee award if a plaintiff fails to obtain at least 10 percent of the damages that it had sought. The weight of authority in this circuit treats the 10 percent threshold "merely as a factor to consider along with other factors weighing for or against an award of attorneys' fees." *Tuf Racing*, 233 F.3d at 592; see also *Stant Mfg. v. Gerdes GmbH*, 2008 WL 687312, at *2 (S.D. Ind. Mar. 11, 2008) ("The 'ten percent' threshold is not a rule; rather, it is merely a factor for the court to consider in making its decision to award attorneys fees"). Moreover, the Seventh Circuit recently commented that "[t]his type of proportionality seems to be losing favor," noting that in a recent case the court had held that "recovering less than 7% of [the] amount

4

## B.    Computation of the lodestar

Having rejected RBC's threshold contentions that a minimal fee (or no fee at all) is appropriate in this case, the court now begins the analysis of determining a reasonable fee. See *Anderson v. AB Painting & Sandblasting, Inc.*, 2009 WL 2525571, at *2 (7th Cir. Aug. 20, 2009) ("If a party prevails, and the damages are not nominal, then Congress has already determined that the claim was worth bringing" and the Court then "must limit itself to determining whether the hours spent were a reasonable means to that necessary end").  As the Seventh Circuit recently reiterated, "[a]lthough there is no precise formula for determining a reasonable fee, the district court generally begins by calculating the lodestar – the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended." *Schlacher*, 574 F.3d at 856 (citing *Hensley*, 461 U.S. at 433-37).

Before determining the hours and rates in this case, however, the Court notes a few basic principles that apply in generating the lodestar in a fee-shifting case.  First, it is appropriate to consider the litigation as a whole, rather than viewing the specific claims atomistically, if "the plaintiff's claims of relief * * * involve a common core of facts or [are] based on related legal theories," such that "much of counsel's time will be devoted generally to the litigation as a

---

sought is not reason to apply *Farrar* if damages are not nominal." *Anderson v. AB Painting & Sandblasting, Inc.*, 2009 WL 2525571, at *2 (7th Cir. Aug. 20, 2009).  In any event, it seems unlikely that any "10 percent rule" would apply here. *Tuf Racing* makes clear that a plaintiff who "scale[s] back its claims before trial" and obtains "more than 10 percent of the scaled-back demand from the jury" has done "enough to take the case out of" any 10 percent rule. 233 F.3d at 592.  Here, Plaintiffs requested $65,000 at trial and recovered $11,100.  Of course, the absence of any mathematical rule premised on a 10 percent threshold in no way eliminates the issue of "proportionality" – that is, the difference between the amount requested by Plaintiffs and the amount awarded – from the Court's analysis.  To the contrary, as explained below, the Seventh Circuit has held that "proportionality concerns are a factor in determining what a reasonable attorney's fee is." *Moriarty*, 233 F.3d at 968; see also *Anderson*, 2009 WL 2525571, at *3 (reaffirming that a fee request that is several times the amount of actual damages "raises a red flag" that requires the district court to give "increased reflection" in determining a proper fee award).

whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988).

Second, a fee award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435; see also *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 873 (7th Cir. 1995). As the court of appeals has summarized, "*Hensley* makes clear that when claims are interrelated, as is often the case in civil rights litigation, time spent pursuant to an unsuccessful claim may be compensable if it also contributed to the success of other claims." *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998).

Third, the fact that the amount yielded by computing the "lodestar" exceeds the amount of the judgment does not necessarily indicate that the prevailing party has made an unreasonable fee request. To the contrary, recognizing the importance of vindicating constitutional rights through the fee shifting vehicles created by Congress, it is not unusual for district courts to grant, and courts of appeals to affirm, attorneys' fees that substantially exceed the amount of the judgment when doing so is reasonable in the circumstances. See, *e.g.*, *Robinson v. City of Harvey*, 489 F.3d 864, 872 (7th Cir. 2007) (affirming $507,000 fee award on $275,000 verdict); *Tuf Racing*, 223 F.3d at 592 (affirming $391,000 fee award on $137,000 verdict). As the Seventh Circuit reaffirmed just last month, "[b]ecause Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no surprise that the cost to pursue a contested claim will often exceed the amount in controversy." *Anderson*, 2009 WL 2525571, at *2.

### 1.    Objections to hours claimed

Before submitting a fee application, the claimant "is expected to exercise reasonable billing judgment in calculating its fees by eliminating charges that are redundant, excessive or otherwise unnecessary." *Harper v. City of Chicago Heights*, 1994 WL 710782, at *2 (N.D. Ill. Dec. 16, 1994). Here, Plaintiffs appear to have done some prudent pruning of their fee request. To begin with, they "reduced much of Mr. Burke's time in this matter and all of the time that he spent observing the trial" (Pet. at 8 n.3), which was appropriate given his relative responsibilities and level of experience and the fact that they seek recovery for two principal trial lawyers (Mr. Keogh and Mr. McGrath). Plaintiffs also have removed from their claim all fees associated with their claims against GMAC. *Id*. at 9 n.5.

In regard to the time for which Plaintiffs do seek recovery, RBC objects to numerous entries on the grounds of "insufficient detail; work not necessary for trial; work related to other claims; time that is excessive for the work performed; and work that was duplicative." After review of those objections, the Court finds most of them unfounded.

As a preliminary matter, an objection that work was not necessary for *trial* appears to be ill-advised, because prevailing parties may recover for work expended leading up to trial as well. For example, in many cases (including this one), work at the discovery and summary judgment stages is critical in marshalling support for claims and ensuring that they survive for trial. Similarly, because each of Plaintiffs' claims centered on common facts and related legal theories – in particular, allegations that RBC mishandled Plaintiffs' mortgage resulting in emotional distress to Plaintiffs (and primarily to Ms. Morris) – this is not a case in which the hours expended are susceptible to evaluation "on a claim-by-claim basis." *Ustrak*, 851 F.2d at 988; see also *Munson v. Milwaukee Bd. of Sch. Dirs.*, 969 F.2d 266, 272 (7th Cir. 1992) (explaining that,

under circuit precedent, "denying the prevailing plaintiff compensation for work done on unsuccessful pendent state law claims in a civil rights action, even if the pendent claims were not directly compensable under a fee-shifting statute, would be 'contrary to the precepts established in *Hensley*'"); *Zabkowicz v. West Bend Co., Div. of Dart Indus., Inc.*, 789 F.2d 540, 551 (7th Cir. 1986) ("Where several claims arise out of a common factual core or are based on related legal theories, separating out the legal services rendered with respect to these overlapping claims would be an exercise in futility"); *cf. Sottoriva v. Claps*, 2009 WL 211170, at *4 (C.D. Ill. Jan. 28, 2009) (finding that work on claims on which plaintiff did not succeed "was intertwined with Plaintiff's other claims such that the Court cannot easily separate out the time attributable to the successful claim," but noting that an adjustment would be made "to reflect the level of success" on the overall litigation).

Most of Defendants' other objections relate either to the necessity of the work performed, the amount of time devoted to specific tasks, or the lack of detail provided in counsel's time records. The standard for evaluating the amount of itemization and detail in time entries in a fee petition, to the extent that there can be said to be one, appears to be based on the market – that is, "the level of detail paying clients find satisfactory." *Garcia v. City of Chicago*, 2003 WL 22175620, at *3 (N.D. Ill. Sept. 19, 2003). In addition, the time entries must be sufficiently detailed to permit the Court to determine whether the hours expended were reasonable and necessary to the conduct of the litigation. Here, while the time entries of Plaintiff's counsel are not as detailed as they might have been, they are not outside the boundaries of what paying clients would accept, nor are they so cryptic as to preclude reasonable analysis. In fact, while the time entries on the bills that Defendants' counsel submitted to its paying client, RBC, are more detailed, they are only marginally so. As Judge Zagel has written, in words that apply equally

here, "there is no binding standard on how hours should be described and how great the detail should be. If, on the face of it, the hours seem out of line, there is some weight to a claim that descriptions are too sparse, but the hours are not out of line here." *Kunz v. City of Chicago*, No. 01 C 1753, Memorandum Opinion and Order, at 3 (N.D. Ill. Aug. 14, 2008).

It is true that there is some repetition and duplication of effort reflected in the time entries of both sides in this case. But in evaluating those records, it is important to keep in mind that when "a case goes on for many years, a lot of legal work product will grow stale." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). This case was set for trial three times and was transferred from Judge Lindberg to Judge Der-Yeghiayan and finally to this Court after substantial pre-trial proceedings had taken place. As the Ninth Circuit sensibly has noted, the kind of duplication of effort that occurs in these circumstances is "*necessary* duplication; it is inherent in the process of litigating over time." *Id.* at 1112 (emphasis in original). And it affects both sides, not just Plaintiffs.

It also bears repeating the observation that "[t]he reasonableness of the requested hours and fees varies in every case, often in direct proportion to the ferocity of an adversaries handling of the case." *Krumwiede v. Brighton Assocs.*, 2006 WL 2349985, at *1 (N.D. Ill. Aug. 9, 2006). Although this Court has been involved in the case for only a fraction of its existence, the docket sheet and transcripts, as well as the Court's personal recollection, attest to the hotly contested nature of the proceedings before, during, and after trial. When parties that do not bear the burden of proof at trial mount a spirited defense of the case, they can hardly complain when their adversaries spend at least as much time and effort to surmount the defense, nor can they validly object to paying the adversaries' reasonable fees when the defense fails.

Finally, in regard to objections to attorneys' fees petitions on excessiveness grounds, the Ninth Circuit also has persuasively explained that "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees" because "[t]he payoff is too uncertain, as to both the result and the amount of the fee." *Moreno*, 534 F.3d at 1112. For that reason, the court advised that "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id.*; see also *Mohr v. Chicago Sch. Reform Bd. of Trs.*, 194 F. Supp. 2d 786, 789 (N.D. Ill. 2002) ("If the winning counsel had taken less time, he might not be in a position to ask for attorneys' fees as the prevailing party's representative"). Here, that observation rings especially true in regard to the RESPA claim, as to which there is very little in the way of reported case law and thus almost no road map for litigation, either at the summary judgment stage or at trial. Nevertheless, if RBC had demonstrated that its lawyers performed similar tasks with similar results in substantially less time, the Court may well have reduced or eliminated certain entries from the lodestar. But RBC made no such attempt – which may have been futile in any event given that its lawyers charged their client approximately 50% more than Plaintiffs seek in their petition.

For all of these reasons, with one exception,[7] the Court sees no basis for excluding from the lodestar calculation any of the hours to which RBC objects. Those hours appear to have been reasonably devoted to the case in light of the issues raised, their novelty and complexity, the lawyers' experience levels, the level of resistance from RBC, the burden of proof that Plaintiff bore at trial, and the risk that inadequate preparation at any stage could have led to no recovery

---

[7] The exception relates to Plaintiffs' efforts to recover $1,904 in attorney time for what they call "recaptured telephone calls." It appears that these sums were not initially included in Plaintiffs' petition, but were added on the basis of an examination of defense counsel's bills to RBC. Plaintiffs' lawyers are obligated to keep accurate time records and if they fail to do so, they cannot recover amounts that are not fairly encompassed within their own records, such as the $1,904 in telephone correspondence time.

(and, correspondingly, no attorneys' fees). RBC's fees and costs were higher than Plaintiffs', each side had two principal trial lawyers, and the billing rates charged by RBC's lawyers actually were comparable to (or slightly higher than) the rates charged by their counterparts on Plaintiffs' side of the case.

### 2. Objections to hourly rates

In regard to the other component of a lodestar, "[c]ounsel's actual billing rate for comparable work is presumptively appropriate for use as the market rate." *Mattenson v. Baxter Healthcare Corp.*, 2005 WL 1204616, at *1 (N.D. Ill. Feb. 11, 2005). Plaintiffs have requested (with one exception) compensation at the hourly rates that their attorneys ordinarily charge their clients. Plaintiffs appropriately have supported those rates with reference to state and federal court orders reflecting court approval of those rates in prior consumer litigation. See, *e.g.*, *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 556-57 (7th Cir. 1999) (approving the submission of fee awards that the attorney has received in similar cases as evidence of an attorney's market rate). In addition, the rates requested for Plaintiffs' principal lawyer, Mr. Keogh, are close to or within the range of rates suggested as reasonable in the *Laffey* Matrix that many courts in this district have used in fee-shifting cases. Finally, the hourly rates charged by Plaintiffs' attorneys in this case are comparable to – and in the main a bit lower than – the rates charged to RBC by their principal lawyers and associates, who were litigating the same issues in the same case. Moreover, to the extent that the rates among the lawyers who litigated the case differ, those differences correlate fairly closely to their experience levels.[8]

---

[8] The rate charged by RBC's lead lawyer, Mr. Blonder, who was admitted to the Bar in 1993, increased from $330.00 to $400.00 per hour during the pendency of the case. Mr. Blonder's trial partner, Mr. Miller, who joined the Bar in 1996 and did not begin working on the case until a few months before trial, billed at a rate of $360.00 per hour. Both principal lawyers for RBC thus have a few years more experience and billed at slightly higher rates than Plaintiffs' principal lawyers, Mr. Keogh and Mr. McGrath, both of whom were admitted to the Bar in 1999. For the most part, the other partners and

All of the preceding observations counsel in favor of adhering to the presumption that counsel's actual billing rate is the market rate for purposes of computing a lodestar for the work performed by Plaintiffs' lawyers on the case. However, consistent with that principle, the Court is compelled to make an adjustment to the per hour rate sought for Mr. McGrath's work in this case.[9] As noted in the petition, Mr. McGrath's usual rate is $275.00 per hour. Plaintiffs seek recovery for his hours at a rate of $340.00 to reflect the risk that Mr. McGrath assumed in accepting the work without any guarantee of being paid. But because Mr. McGrath came late to the case, it seems counterintuitive to assume that he would have been able to provide *more* value in a case that he joined shortly before trial than he is able to provide for his typical clients in typical cases, most of which he likely works up from the start. If anything, his lack of familiarity with the case might suggest a discount from his usual rate. But because his usual rate is lower than the rates charged by any of the other principal trial lawyers in the case, the Court will accept Mr. McGrath's customary rate of $275.00 per hour rate for his work on this case.

Having considered the hours and rates submitted by Plaintiffs, along with RBC's objections, the Court arrives at the following lodestar:

---

associates who worked on the matter for RBC charged between $230.00 and $350.00 per hour – amounts that are in the same range as (or, again, slightly higher than) the hourly rates at which Plaintiffs' secondary lawyers seek to be compensated in the fee petition.

[9] The Court stresses that the adjustment is not meant to reflect unfavorably on the quality of Mr. McGrath's work in the case.

| Attorney | Hours | Rate | Amount |
|---|---|---|---|
| Keith Keogh | 411.3 | $340 | $139,842.00 |
| Alexander Burke | 98.6 | $288 | $28,396.80 |
| Elizabeth Monkus | 38.6 | $270 | $10,422.00 |
| Alastar McGrath | 145 | $275 | $39,875.00 |
| Greg Goetz | 33.5 | $175 | $5,862.50 |
| Linda Barksdale | 8.2 | $100 | $820.00 |
|  |  |  |  |
| **Total Lodestar** |  |  | **$225,218.30** |

### C.    Adjustments to the lodestar

In many fee-shifting cases, computation of the lodestar is both the beginning and essentially the end of the fee analysis.  As the Supreme Court has observed, when litigation of a fee-shifting case leads to "excellent results" for the prevailing party, the plaintiff's attorney "should recover a fully compensatory fee."  *Hensley*, 461 U.S. at 435.  In the Supreme Court's view, "[n]ormally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified."  *Id*.

By contrast, where it cannot be said that the results obtained were "excellent," the lodestar figure remains the point of initial departure, but the "district court may then adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation."  *Schlacher*, 574 F.3d at 856-57; see also *Estate of Enoch*, 570 F.3d at 823-24 ("The lodestar figure is the 'starting point,'" but other factors that properly may bear on the calculus include "whether, in addition to the claims on which plaintiffs prevailed, there are other claims on which they did not prevail," as

well as the overall "results obtained in the litigation"); *Connolly v. Nat'l Sch. Bus. Svc., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999) (noting that the court has used a three-part test "in determining the degree of success a plaintiff has obtained": (i) the difference between the actual judgment and the recovery sought, (ii) the significance of the legal issues on which the plaintiff prevailed, and (iii) the public interest at stake in the litigation).[10] And of these factors, "success is the most significant * * * for a judge to consider in deciding what is a reasonable fee." *Connolly*, 177 F.3d at 597.

Here, the Court easily concludes that Plaintiffs did not obtain anywhere near the "excellent" result that would justify an award of all (or even substantially all) of the claimed attorneys' fees. As *Moriarty*, *Cole*, and a host of other Supreme Court and Seventh Circuit cases teach, where a party obtains a result that is substantially less than its demand and/or the fees that it requests in compensation, a "reasonable" fee may be less than the full lodestar amount. "Once the district court reaches an amount using the lodestar determination, it may then adjust that award in light of the plaintiff's 'level of success.'" *Spegon*, 175 F.3d at 557; see also *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 736 (7th Cir. 1998) ("district courts both can and should look to the degree of success a party achieves in deciding how generous a fee award should be").

---

[10] In other cases, the Seventh Circuit has referenced the twelve factor set forth in *Hensley* – "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases" – while noting that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Anderson*, 2009 WL 2525571, at *1 & n.1.

### 1.     Proportionality

While the court of appeals repeatedly has declined to adopt "any mechanical rules requiring that a reasonable attorney's fee be no greater than some multiple of the damages claimed or recovered," it has been equally consistent in noting that "proportionality concerns are a factor in determining what a reasonable attorney's fee is." *Moriarty*, 233 F.3d at 968; see also *Tuf Racing*, 233 F.3d at 592 (noting that if a party "had incurred attorney's fees that were disproportionate to a reasonable estimate of the value of its claim, it could not recover all those fees, but only the reasonable proportion, which is to say the amount that would have been reasonable to incur had the value of the claim been estimated reasonably rather than extravagantly").  Thus, a district court's attorney's fee order "should evidence increased reflection before awarding attorney's fees that are large multiples of the damages recovered or multiples of the damages claimed." *Moriarty*, 233 F.3d at 968.[11]

_____

[11] In a recent opinion, *Anderson v. AB Painting & Sandblasting, Inc.*, 2009 WL 2525571 (7th Cir. Aug. 20, 2009), the Seventh Circuit discussed at some length the issue of "proportionality" in attorney's fee cases.  As the court of appeals explained, "[p]roportionality can refer to multiple concepts in the realm of attorney's fees."  *Id*. at *2.   In *Anderson*, for example, the "proportionality" at issue involved "a comparison between a plaintiff's damages and his attorney's fees."  *Id*.  The district court had drastically reduced the plaintiffs' attorney's fee request as excessive, even though the plaintiffs recovered the entire amount of the claimed deficiency in pension fund contributions that gave rise to the litigation in the first place.  *Id*. at *1.  On appeal, the Seventh Circuit reversed, reasoning that even though the fee request was more than seven times the amount of damages, there may have been good cause for the expenditure of fees.  *Id*. at *4.  In that vein, the court of appeals observed that the claim "could have been resolved at a greatly reduced cost if [defendant] had cooperated with discovery requests and settlement discussions, obeyed the district court's orders, and not filed a serious of frivolous motions after the court had already entered judgment for the [plaintiffs]."  *Id*.  The court thus concluded that the district court's reduction of the fee request lacked adequate explanation and remanded for a new calculation.  *Id*.

This case involves a different conception of "proportionality" than that at issue in *Anderson* – one that arises because Plaintiffs "recover[ed] a very small percentage of the damages claimed."  Nothing in *Anderson* undermines the analysis set forth in *Moriarty*.  To the contrary, *Anderson* expressly reaffirmed the statement in *Moriarty* that a district court "should give 'increased reflection' before awarding attorney's fees that are several times the amount of the actual damages" and echoed *Moriarty*'s concern that such "a comparatively large fee request raises a red flag" (*id*. at *3).

Here, the fees requested (more than $234,000) are "large multiples" of the damages recovered ($11,100, including only $1,100 on the RESPA claim) and "multiples" of the damages claimed at trial ($65,000), and thus the Court must adhere to the Seventh Circuit's guidance on the "proportionality concerns" addressed in *Moriarty*. Perhaps the claim initially was viewed as worth more than Plaintiffs actually requested at trial; the six-figure settlement offer that RBC contends was made at the time that RBC and GMAC both remained in the case (see below) provides some support for the view that even Defendants at one time valued the case higher than $65,000. Nevertheless, the size of the fee award relative to the damages sought and awarded at trial clearly "raises a red flag" (*Anderson*, 2009 WL 2525571, at *3) and thus makes this fee petition a candidate for scrutiny on proportionality grounds.

In the seminal case on fee-shifting, the Supreme Court stressed that "[t]here is no precise rule or formula" for making adjustments to the requested fee. *Hensley*, 461 U.S. at 436-37. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* And "[t]he court necessarily has discretion in making this equitable judgment," so long as that discretion is exercised in light of the permissible factors under controlling law. *Id.*

As Judge Shadur observed, the Seventh Circuit has upheld on many occasions "a reduction of the award without parsing the specific hours to be eliminated" where such a reduction is warranted in light of the relevant circumstances, including the limited success achieved at trial. *Tauber v. City of Chicago*, 33 F. Supp. 2d 699, 701 (N.D. Ill. 1999) (citing cases). In *Tauber*, for example, Judge Shadur reduced the requested fee award by 40%, taking into account the positive ("the great value of counsel's services in having obtained substantial success in the face of a war of attrition that very probably would have defeated less dedicated

adversaries") and the negative ("the substantial degree of [Plaintiff's] lack of success on her total claims (even though those claims were not frivolous as such)"). *Id*. at 702-03. Similarly, in *Cooke v. Stefani Mgmt. Svcs., Inc.*, 250 F.3d 564, 570 (7th Cir. 2001), the Seventh Circuit ruled that "the district court's 50 percent limited-success reduction [was] entirely justified" where the plaintiff requested nearly $300,000 from the jury, but recovered only $7,500. As the court noted, because the award to the plaintiff was "hardly an overwhelming success" in a "simple case with no broad social impact," counsel should have been "happy to receive fees of nearly seven times the amount of their client's recovery." *Id*.; See also *Spegon*, 175 F.3d at 558-59 (affirming reduction of lodestar by 50% in light of limited success); *Garcia v. Oasis Legal Fin. Oper. Co.*, 608 F. Supp. 2d 975, 980 (N.D. Ill. 2009) (reducing lodestar amount by 50% because the degree of success obtained by plaintiff, "while not entirely insignificant, is partial at best"); *Sottoriva*, 2009 WL 211170, at *4 (reducing lodestar by 67% "to reflect Plaintiff's limited degree of success"); *Cannella v. Anodyne Corp.*, 1997 WL 573398, at *2-*3 (N.D. Ill. Sept. 11, 1997) (reducing lodestar by additional 35% after initial item-specific reductions).

The Court finds this case to be much like *Tauber*, at least in the sense that determining an appropriate fee reduction based on "overall success" requires a balance of positive and negative considerations. On the one hand, Plaintiffs did prevail on two of the three counts on which they went to trial. One of the claims that the jury resolved in Plaintiffs' favor, the RESPA claim, upholds a consumer protection statute, and thus has at least some public interest value beyond this case. In addition, the fact that Defendants litigated tooth-and-nail at every stage of the case, expending one-and-a-half times the fees that Plaintiffs seek, places the number of hours claimed by Plaintiffs in perspective. On the other hand, there is no escaping the obvious: the damage award of $11,100 pales in comparison to the amount that Plaintiffs initially sought, the value of

the case as assessed by both parties at the time of the early settlement discussions to which RBC alludes (see below), and even the "scaled-down" damages request that Plaintiffs submitted to the jury at trial. On balance, the Court determines that a reduction in the lodestar on "proportionality" grounds is appropriate in light of the limited success that Plaintiffs achieved in this case.

### 2. Settlement history

Another factor that may affect a fee award is the settlement history of the case. RBC contends that in February 2006, not long after the complaint was filed, an offer was made to settle the case as to both RBC and GMAC for $105,000. See Pet. at 9; Resp. at 7 & n.4; Reply at 8. Plaintiff appears to dispute whether a formal settlement offer was made and notes that the materials before the Court include no concrete evidence of an offer or its rejection. Plaintiffs also contend that RBC never made an offer to settle separate from GMAC and that RBC failed to respond to any of Plaintiffs' settlement offers after the initial February 2006 conference.

Plaintiffs are incorrect in asserting that "the parties' past settlement discussions are irrelevant" and that "the Seventh Circuit has not listed settlement offers as a factor for this Court to consider." Reply at 8. The Seventh Circuit has stated that "[s]ubstantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees even where Rule 68 does not apply." *Moriarty*, 233 F.3d at 967. To be sure, as Plaintiffs also argue, "settlement offers are not determinative," and the Court "need not reduce the lodestar calculation because of any settlement offers." Reply at 8. In fact, "[t]he district court must only *consider* the substantial settlement offer; it need not reduce the lodestar calculation because of the offer." *Moriarty*, 233 F.3d at 967. In addition, the court of appeals "stress[ed] that a substantial offer is only one of the factors that a district court should evaluate in

making an attorney's fee award and (absent an offer complying with Rule 68 where that Rule applies) is not necessarily determinative." *Id.*

Under circuit precedent, "an offer is substantial if * * * the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party." *Moriarty*, 233 F.3d at 967. Here, the offer to which RBC refers – to settle on behalf of both defendants – was almost ten times the amount of the damages recovered from RBC in this case.[12] "In such circumstances, a district court should reflect on whether to award only a percentage (including zero percent) of the attorney's fees that were incurred after the date of the settlement offer." *Id.*; see also *Lohman v. Duryea Borough*, 574 F.3d 163, 169 & n.5 (3d Cir. 2009) (affirming district court's award of "roughly one-half of the lodestar" where the district court considered, among other things, "the degree of [plaintiff's] success" and the fact that plaintiff rejected a settlement offer of more than six times the amount awarded by the jury).

In view of the actual verdict, it is easy to conclude that Plaintiffs overvalued their case. But RBC's statement (Resp. at 8) that "[t]his case never had a six-figure value" rings hollow in view of its willingness to pay – by its own account – $75,000 of a $105,000 settlement offer on behalf of both Defendants. All of the parties, it seems, overvalued the case. And while it is tempting to penalize Plaintiffs for walking away from what appears in hindsight to have been a generous early settlement offer, RBC does not contest Plaintiffs' contention that Defendants did not return to the bargaining table in any meaningful sense at any point between the rejection of the initial settlement offer in February 2006 and the trial in June 2008. Instead, RBC appears to have dug in its heels, spending more than $350,000 in defense of the case. See *Tuf Racing*, 233 F.3d at 592 (affirming $391,000 fee award on $137,000 damage award and noting that amount

---

[12] Plaintiffs received nothing from GMAC, because GMAC prevailed at summary judgment. As noted above, Plaintiffs' appeal of that ruling, entered by Judge Lindberg before the transfer of this case to this Court, remains pending in the Seventh Circuit.

expended by prevailing party was "little more than a third as great as [the losing party's] expenditure in defending" the case).

The upshot is that both sides may well have missed further opportunities to settle the case and the substantial number of hours that Plaintiffs' counsel devoted to the case in an effort to win it were driven in large part by (i) the burden of proof that they bore and (ii) the even greater resources that Defendants devoted to defeating Plaintiffs' claims. In consideration of all of these circumstances, the Court concludes that while Defendants "should not have to shoulder the *entire* financial burden occasioned by [Plaintiffs' counsel's] failure to make a reasonable assessment of the value of their case" (*Altergott v. Modern Collection Techniques*, 864 F. Supp. 778, 783 (N.D. Ill. 1994) (emphasis added)), both sides must share in the responsibility for generating approximately $600,000 in legal fees on what the jury determined was an $11,000 case.[13]

* * * * *

In view of the foregoing analysis, and bearing in mind that the degree of success obtained is the most important factor in determining a reasonable fee (see *Connolly*, 177 F.3d at 597), the Court concludes that a 40% reduction in the lodestar is appropriate to account for the wide gulf between the amount of damages requested at every stage of this litigation and the actual jury award after trial. In view of that substantial reduction, the Court determines that no additional reduction is warranted for Plaintiffs' failure to appropriately value the case at the outset – particularly in view of the absence of a clear record of the settlement offer to which RBC refers and both parties' apparent inability to meaningfully revisit settlement possibilities after the initial

---

[13] In addition to the major objections to the fee petition that the Court has addressed above, the Court has reviewed a number of other less significant objections pertaining to, among other things, the competency of Plaintiffs' counsel and individual time entries by Plaintiffs' counsel and paralegal. The Court concludes that none of these objections are well taken and need not belabor the analysis. See *Moriarty*, 233 F.3d at 968 ("unlike in the case of substantial settlement offers or disproportionality, the district court need not demonstrate in a fee order that it has considered each individual objection," particularly those "less significant objections").

offer to which RBC alludes. The Court will set forth the amount of the fee award below, after taking into account Plaintiffs' request for the fees incurred in litigating the fee petition itself.

### D.     Work on the fee petition

Plaintiffs also seek to recover for the time spent on the fee petition. "Ample case law supports the proposition that when a prevailing party is forced to litigate to obtain a fee award, a component of that award may include a reasonable fee for the time expended in preparing and litigating the fee petition." *Trs. of the Chicago Plastering Inst. Pension Trust v. Cork Plastering, Inc.*, 2008 WL 728897, at *6 (N.D. Ill. Mar. 18, 2008). RBC does not dispute that general proposition, nor did it submit any specific objections to the hours for which Plaintiffs seek compensation in connection with the dispute over the fee petition. Those reasons alone provide ample basis for awarding all of the petition-related fees sought by Plaintiffs.

In addition, the Court has reviewed the documentation submitted by Plaintiffs in support of their request for fees related to the fee petition. Although Plaintiffs seek reimbursement for an unusually large number of hours at the petition stage, RBC mounted an unusually fervent campaign to resist the fee petition. Plaintiffs were forced to spend time and effort compelling RBC's compliance with the Local Rule 54.3 process and responding to objections to the majority of time entries. While the Court has reduced the lodestar significantly, it has done so on the basis of two well established principles – proportionality and settlement history – that would not have been difficult to articulate succinctly. In addition to making those points, RBC has articulated a litany of minor objections, the vast majority of which were not well taken.

The Supreme Court has expressed the view that "[a] request for attorneys' fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. But that is what happened in this case. For all of the reasons stated above, the Court finds that all of the "time expended in

preparing and litigating the fee petition" (*Trs. of the Chicago Plastering Inst. Pension Trust*, 2008 WL 728897, at *6) was reasonably spent and will include that time, charged at each lawyer's usual rate, in the fee award.

## III. Conclusion

For the foregoing reasons, the Court grants Plaintiffs' fee petition [281] in part and denies it in part.[14] Specifically, the Court awards the following attorneys' fees and costs through the date of judgment on the verdict in this case:

| Attorney | Hours | Rate | Amount |
|---|---|---|---|
| Keith Keogh | 411.3 | $340 | $139,842.00 |
| Alexander Burke | 98.6 | $288 | $28,396.80 |
| Elizabeth Monkus | 38.6 | $270 | $10,422.00 |
| Alastar McGrath | 145 | $275 | $39,875.00 |
| Greg Goetz | 33.5 | $175 | $5,862.50 |
| Linda Barksdale | 8.2 | $100 | $820.00 |
| | | | |
| **Lodestar sum** | | | **$225,218.30** |

**Less 40% reduction**                                         **$ 90,087.32**

=========

**Sum total through date of judgment**           **$135,130.98**

---

[14] RBC's motion to strike and to bar undisclosed material from Plaintiffs' fee petition [283] is denied as moot; the Court had no need to rely on the evidence to which RBC objected because the other materials cited above provided adequate support for the hourly rates used to compute the lodestar.

The Court also awards the following in attorneys' fees incurred in connection with litigating this fee petition:

| Attorney | Hours | Rate | Amount |
|---|---|---|---|
| Keith Keogh | 46.3 | $340 | $15,742.00 |
| Ainat Margalit | 19.7 | $288 | $5,673.60 |
| Alastar McGrath | 8.3 | $275 | $2,282.50 |
|  |  |  |  |
| **Fee litigation award** |  |  | **$23,698.10** |

Finally, the Court awards Plaintiffs' costs in the amount of $7,066.85. Adding these components, the total fee award to Plaintiffs is $165,895.93.

Dated: September 16, 2009

_____
Robert M. Dow, Jr.
United States District Judge